IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC INTERNATIONAL CENTER FOR HIGH TECHNOLOGY RESEARCH, | ) | |
| Plaintiff, | ) | No. 26-924 |
| | ) | Senior Judge Smith |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S PARTIAL MOTION TO DISMISS**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

WILLIAM J. GRIMALDI
Assistant Director

SEAN K. GRIFFIN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
PO Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 451-7475

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

QUESTIONS PRESENTED .......... 1

BACKGROUND .......... 2

ARGUMENT .......... 4

I. Legal Standard .......... 5

II. Plaintiff Fails To Plead A Cognizable Breach Of The Duty Of Good Faith And Fair Dealing .......... 6

a. Plaintiff's Claim For Breach Of The Duty Of Good Faith And Fair Dealing Fails To Identify A Specific Implied Promise That Was Undermined .......... 6

b. Plaintiff's Claim For Breach Of The Implied Duty Of Good Faith And Fair Dealing Should Be Dismissed As Entirely Duplicative Of Its Claim For Breach Of The Express Terms Of The Contract .......... 10

CONCLUSION .......... 11

# TABLE OF AUTHORITIES

Cases

*Acceptance Ins. Cos., Inc. v. United States*,
583 F.3d 849 (Fed. Cir. 2009) ..........5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........5-6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..........5

*BGT Holdings LLC v. United States*,
984 F.3d 1003 (Fed. Cir. 2020) ..........7, 10

*Bradley v. Chiron Corp.*,
136 F.3d 1317 (Fed. Cir. 1998) ..........7

*Clean Team Janitorial Serv., Inc. v. United States*,
171 Fed. Cl. 1 (2024) ..........5

*Dobyns v. United States*,
915 F.3d 733 (Fed. Cir. 2019) ..........6-8

*Doe v. Indyke*,
457 F. Supp. 3d 278 (S.D.N.Y. 2020) ..........6

*In re Sorrento Therapeutics, Inc. Sec. Litig.*,
97 F.4th 634 (9th Cir. 2024) ..........6

*Metcalf Constr. Co. v. United States*,
742 F.3d 984 (Fed. Cir. 2014) ..........6

*Mutakaber v. Sec'y of State*,
162 F.4th 1141 (Fed. Cir. 2025) ..........8

*Portland Mint v. United States*,
102 F.4th 1371 (Fed. Cir. 2024) ..........10-11

*Precision Pine & Timber, Inc. v. United States*,
596 F.3d 817 (Fed. Cir. 2010) ..........7-8

*Sanchez v. United States, No. 25-565C*,
2026 WL 248141 (Fed. Cl. Jan. 29, 2026) ..........5

*Seneca Glob. Servs., LLC v. United States, No. 25-195C*,
2026 WL 2947660 (Fed. Cl. Sept. 30, 2026) ..........8

*Sommers Oil Co. v. United States*,
241 F.3d 1375 (Fed. Cir. 2001) ........ 5

*Spectre Corp. v. United States*,
178 Fed. Cl. 1 (2025) ........ 6, 8

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ........ 5

**Statutes**

42 U.S.C. § 7438 ........ 2

**Rules**

Rule 12(b)(6) of the Rules of the Court of Federal Claims ........ 1

**Other**

2 C.F.R. § 200 ........ 3

2 C.F.R. § 200.339 ........ 4

2 C.F.R. § 200.340 ........ 9

2 C.F.R. § 200.343 ........ 9

2 C.F.R. § 200.344 ........ 9

2 C.F.R. § 200.345 ........ 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC INTERNATIONAL CENTER FOR HIGH TECHNOLOGY RESEARCH | ) | |
| | ) | |
| Plaintiff, | ) | No. 26-924 |
| | ) | Senior Judge Smith |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S PARTIAL MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims (RCFC), the United States moves to dismiss Count II of the complaint filed by plaintiff Pacific International Center for High Technology Research (PICHTR) for failure to state a claim upon which relief can be granted. Count II, which alleges a breach of the duty of good faith and fair dealing, should be dismissed because plaintiff does not identify the requisite implied promise that the government allegedly breached, and because this count improperly duplicates Count I, plaintiff's breach of contract claim.

**QUESTIONS PRESENTED**

1. Whether plaintiff can establish a breach of the duty of good faith and fair dealing without identifying a specific implied contractual promise as required by Federal Circuit precedent.

2. Whether plaintiff can establish a breach of the duty of good faith and fair dealing where the allegations purporting a breach of this implied duty merely reiterate plaintiff's breach of contract claim.

## BACKGROUND

*Grant and Termination*

In 2022, Congress enacted Section 138 of the Clean Air Act as part of a reconciliation bill that appropriated $2.8 billion for the Environmental and Climate Justice Block Grant Program (ECJP). *See* IRA, Pub. L. No. 117-169, 136 Stat. 1818, 2078 (2022) (codified at 42 U.S.C. § 7438). Congress provided that the EPA Administrator "shall use" the funds "to award grants" to eligible entities "to carry out" specified activities "that benefit disadvantaged communities, as defined by the Administrator." 42 U.S.C. § 7438(a)–(b). Eligible activities include, for example, "investments in low- and zero-emission and resilient technologies"; "mitigating climate and health risks from urban heat islands, extreme heat, wood heater emissions, and wildfire events"; "climate resiliency and adaptation"; and "facilitating engagement of disadvantaged communities in State and Federal advisory groups, workshops, rulemakings, and other public processes." *Id.* § 7438(b)(2)(A)–(E). In implementing the ECJP, EPA created several grant programs, including, as relevant here, the Community Change Grants (CCG) program, intended to help disadvantaged communities tackle environmental and climate justice challenges through projects that reduce pollution, increase community climate resilience, and build community capacity. Compl. ¶ 1.[1]

On or about December 12, 2024, EPA issued a Notice of Award and Grant Agreement to PICHTR under the CCG program for its proposal, "Uplifting the Wai'anae Community for Resilience and Vibrance," Compl. ¶ 26, to "support community-based climate resilience by initiating an off-grid power supply, sustainable on-site agriculture, green firebreaks,

[1] For the purposes of this Motion only, we accept the facts as plead in plaintiff's complaint filed June 26, 2026, ECF No. 1.

reforestation, and green stormwater infrastructure at the Pu'uhonua O Wai'anae (POW) village." Appx004.

The Grant Agreement included terms and conditions, under which the recipient expressly "agree[d] to comply with the current Environmental Protection Agency (EPA) general terms and conditions available at: https://www.epa.gov/grants/epa-general-terms-and-conditions-effective-october-1-2024-or-later." Appx005.

On May 1, 2025, EPA informed plaintiff that it was unilaterally terminating the Grant Agreement via memorandum (Termination Memorandum). Compl. ¶ 40. The Termination Memorandum explained that the Grant Agreement was "terminated effective immediately on the grounds that the remaining portion of the Federal award will not accomplish the EPA funding priorities for achieving program goals." Appx008.

*Complaint*

On June 26, 2026, plaintiff filed its complaint alleging an unspecified amount of money as a result of the grant termination. Compl. at 15. Plaintiff's complaint asserts two counts: Count I argues that "EPA breached the express terms of the Grant Agreement by wrongfully terminating it and denying Plaintiff access to the funds it was owed," Compl. ¶ 66; Count II argues that United States breached the implied duty of good faith and fair dealing when it, "among other things," allegedly "target[ed] the Grant Agreement for unilateral termination in violation of the Agreement's terms and conditions," "directed plaintiff to stop work under the agreement" and "denied plaintiff access to [the grant funds]." Compl. ¶ 75.

In count I, plaintiff does not clearly identify the specific language that was purportedly breached by the Government's termination, *see* Compl. ¶¶ 62-67, but elsewhere in the complaint, plaintiff alleges that "The General Terms and Conditions referenced by and incorporated into the

Grant Agreement authorized EPA to unilaterally terminate the grant only in the event of the grantee's failure to comply with the terms and conditions of the grant or pursuant to the programmatic terms and conditions specified in the grant." Compl. ¶ 37. Specifically, plaintiff claims that "[t]he programmatic terms and conditions referenced by and incorporated into the Grant Agreement provide for termination by EPA only as a result of the grantee's substantial noncompliance with the grant's terms and conditions, or where evidence of the grantee's fraud, waste, or abuse supports termination for noncompliance under 2 C.F.R. § 200.339." Compl. ¶ 38.

Plaintiff's count II claim alleging breach of the implied duty of good faith and fair dealing is less clear. Plaintiff's complaint does not identify any specific implied duty that was breached by the termination. At paragraphs 68-78 of the complaint, plaintiff broadly invokes the relevant legal standard and alleges that the EPA was required to "act in good faith and deal fairly with Plaintiff," Compl. ¶ 74, but that "EPA's actions interfered with Plaintiff's performance under the Grant Agreement and destroyed Plaintiff's reasonable expectations regarding the fruits of its Grant Agreement," Compl. ¶ 74. As addressed above, plaintiff's complaint also alleges that United States breached the implied duty of good faith and fair dealing when it terminated the Grant Agreement, directed plaintiff to stop work under the Grant Agreement, and denied it grant funds. *See* Compl. ¶ 75. However, nowhere does plaintiff articulate any underlying facts or implied promise to support such a claim. As such, plaintiff improperly pleads its claim for breach of the duty of good faith and fair dealing as simply a backup argument for the same allegations in count I.

## ARGUMENT

Plaintiff's claim for breach of the duty of good faith and fair dealing should be dismissed

under RCFC 12(b)(6) because it does not state a claim upon which relief can be granted. Plaintiff has not pleaded the necessary elements of such a claim, as it fails to identify any implied promise arising from the agreement. Instead, plaintiff's claim challenges the express terms of the grant agreement, thereby improperly duplicating its breach of contract claim.

## I. Legal Standard

Under RCFC 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief could be granted" unless it alleges facts "'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Acceptance Ins. Cos., Inc. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). When reviewing a motion to dismiss for failure to state a claim, the Court may consider both the pleadings as filed and the documents attached to a pleading directly or by reference. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

In assessing the allegations in the complaint, the Court "must accept as true all the factual allegations, and . . . indulge all reasonable inferences in favor of the non-movant[.]" *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted). But the Court is not required to accept legal conclusions couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). And a plaintiff's "nonconclusory factual allegations" must "set[] forth a plausible—as opposed to merely a conceivable—claim for relief." *Clean Team Janitorial Serv., Inc. v. United States*, 171 Fed. Cl. 1, 8 (2024) (citing *Ashcroft*, 556 U.S. at 680). Simply put, "'the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action[.]'" *Sanchez v. United States*, No. 25-565C, 2026 WL 248141, at *6 (Fed. Cl. Jan. 29, 2026) (alterations in original) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36

(3d ed. 2004)). "A claim will only have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Indyke*, 457 F. Supp. 3d 278, 281 (S.D.N.Y. 2020) (quoting *Ashcroft*, 556 U.S. at 678); *see also In re Sorrento Therapeutics, Inc. Sec. Litig.*, 97 F.4th 634, 641 (9th Cir. 2024) (holding that a plaintiff's allegations can be dismissed for failure to plead sufficient facts to support a cognizable legal theory).

## II. Plaintiff Fails To Plead A Cognizable Breach Of The Duty Of Good Faith And Fair Dealing

The Court should dismiss plaintiff's Count II under RCFC 12(b)(6) because plaintiff has not stated a viable claim for breach of the duty of good faith and fair dealing. Plaintiff fails to allege the essential elements of such a claim, including any implied promise arising from the agreement. Instead, to the extent plaintiff asserts a breach of this duty, the allegation impermissibly repeats its breach of contract claim in a duplicative second count.

### a. Plaintiff's Claim For Breach Of The Duty Of Good Faith And Fair Dealing Fails To Identify A Specific Implied Promise That Was Undermined

The Court should dismiss plaintiff's claim for breach of the duty of good faith and fair dealing because plaintiff does not identify any specific implied promise that the United States allegedly violated. Instead, plaintiff effectively restates a challenge to the Government's termination authority under the grant—an issue governed by express contractual language, not by any implied obligation.

Every contract "imposes upon each party an implied duty of good faith and fair dealing in its performance and enforcement." *Dobyns*, 915 F.3d at 739 (Fed. Cir. 2019) (citing *Metcalf*, 742 F.3d at 990). To plead a breach of that duty, however, a party must point to a "specific promise" that was undermined. *Spectre Corp. v. United States*, 178 Fed. Cl. 1, 23 (2025) (citing Dobyns,

915 F.3d at 739). The implied duty arising from such a promise "cannot expand a party's contractual duties beyond those in the express contract," nor can it impose obligations inconsistent with express terms. *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010). Emphasizing this requirement, the Federal Circuit has made clear that the implied duty depends on "what that contract promises (or disclaims)," and courts therefore examine the contract's language and context to determine whether an implied obligation exists. *Precision Pine*, 596 F.3d at 830 (citing *Hercules*, 516 U.S. at 433). In *Precision Pine*, the Federal Circuit held that a plaintiff could not rely on an implied duty to create a guarantee of uninterrupted performance where the contract already contained express provisions that addressed the timber rights at issue. *Id*. at 830–31.

The Federal Circuit reinforced this principle in *Dobyns*, holding that "a specific promise must be undermined for the implied duty [of good faith and fair dealing] to be violated." *Dobyns*, 915 F.3d at 739 (emphasis added). The court further explained that implied obligations "are limited to assuring compliance with the express terms of the contract and cannot be extended to create obligations not contemplated in the contract." *Id*. (quoting *Bradley*, 136 F.3d at 1326). In *Dobyns*, the court reversed the trial court's finding that the United States breached the duty of good faith and fair dealing because the alleged duties were not grounded in any contract provision; the trial court had instead imposed new obligations absent a contractual foundation. *Id*. at 740.

Together, these cases establish that the implied duty of good faith and fair dealing is anchored in the rights and obligations the parties actually agreed to. The duty of good faith and fair dealing cannot be invoked to override express contractual language, *Precision Pine*, 596 F.3d at 830–31, nor used to infer new obligations beyond the contract's terms, *Dobyns*, 915 F.3d at

739–40. *See also BGT Holdings*, 984 F.3d 1003, 1016 (Fed. Cir. 2020) (a party "cannot use the doctrine of good faith and fair dealing to complain of the very conduct that the contract expressly permits") (citing *Precision Pine*, 596 F.3d at 831); *Mutakaber v. Sec'y of State*, 162 F.4th 1141, 1149 (Fed. Cir. 2025). Consequently, a plaintiff must identify an implied promise within the agreement to plausibly allege a breach. *See Dobyns*, 915 F.3d at 739; *Spectre*, 178 Fed. Cl. at 23.

More recently, this Court applied these principles in dismissing a similar claim in *Seneca Global Services, LLC v. United States*, No. 25-195C, 2026 WL 2947660, at *41–42 (Fed. Cl. Sept. 30, 2026). There, the plaintiff argued that the Government's decision not to exercise option years breached the duty of good faith and fair dealing. The Court rejected that contention at the motion-to-dismiss stage, finding that because the contract expressly addressed option periods, the plaintiff could not invoke the implied duty to avoid the contract's plain language. *Id*. at *36–42.

Plaintiff's count II, for breach of the implied duty of good faith and fair dealing, similarly fails to plead a specific promise implied by the agreement. Only three paragraphs in plaintiff's complaint attempt to describe its alleged breach of the duty of good faith and fair dealing. *See* Compl. at ¶¶ 74-76. Paragraphs 74 and 76 allege, respectively, "Plaintiff entered into the Grant Agreement with EPA with the reasonable expectation that EPA would comply with the terms of that Agreement and that EPA would act in good faith and deal fairly with Plaintiff," Compl. ¶ 74, and "EPA's actions interfered with Plaintiff's performance under the Grant Agreement and destroyed Plaintiff's reasonable expectations regarding the fruits of its Grant Agreement," Compl. ¶ 76. But these paragraphs simply raise and reiterate the basic legal standard for a claim for breach of the duty of good faith and fair dealing. *See Dobyns*, 915 F.3d 739 ("A party breaches the contract when it fails to abide by this implied duty, which includes 'the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable

expectations of the other party regarding the fruits of the contract.'") (*quoting Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005)).

Between these paragraphs, in paragraph 75, plaintiff specifies its allegation in a single paragraph:

> EPA breached the Grant Agreement's implied duty of good faith and fair dealing by, among other things: targeting the Grant Agreement for unilateral termination in violation of the Agreement's terms and conditions, directing Plaintiff to stop work under the Agreement, denying Plaintiff access to funds already awarded to Plaintiff without prior notice or explanation, preventing Plaintiff from spending money already awarded to it, unilaterally imposing new term and conditions on Plaintiff, and insisting that the funds already awarded to Plaintiff were unobligated despite factual and legal support to the contrary.

Compl. ¶ 75.

As such, plaintiff's claim for breach of the duty of good faith and fair dealing starts and ends with EPA's decision to terminate the grant—*i.e.*, its breach of contract claim. *See* Compl. ¶ 66 ("EPA breached the express terms of the Grant Agreement by wrongfully terminating it and denying Plaintiff access to the funds it was owed. EPA identified no valid grounds for termination."). While plaintiff objects to the direction to stop work under the agreement and plaintiff's inability to use grant funds following the termination, *see* Compl. ¶ 75, those challenges are not distinct from the challenge to the termination but are instead the effects of termination that inevitably follow from the termination itself. *See* 2 C.F.R. § 200.340(d) ("When the Federal award is terminated in part or its entirety, the Federal agency or pass-through entity and recipient or subrecipient remain responsible for compliance with the requirements in §§ 200.344 and 200.345."); § 344 (describing 120-day closeout process); *see also id.* at § 343 ("Costs to the recipient or subrecipient resulting from financial obligations incurred . . . after the termination of a Federal award are not allowable"). Plaintiff's complaint makes clear that the

core of plaintiff's challenge is the termination of its grant, which is expressly addressed by the termination language contained in the grant agreement, and thus not an implied promise.

Accordingly, plaintiff's claim for breach of the duty of good faith and fair dealing should be dismissed where plaintiff fails to plead an implied promise that was breached.

**b. Plaintiff's Claim For Breach Of The Implied Duty Of Good Faith And Fair Dealing Should Be Dismissed As Entirely Duplicative Of Its Claim For Breach Of The Express Terms Of The Contract**

Similarly, plaintiff's claim for breach of the duty of good faith and fair dealing should be dismissed because it merely restates plaintiff's breach-of-contract claim, advancing the same basic claims through a separate count that is foreclosed by the grant's express terms. Where a "breach of contract claim and the breach of the implied covenant of good faith and fair dealing claim are based on the same facts, the latter claim should be dismissed as redundant." *Portland Mint v. United States*, 102 F.4th 1371, 1384 (Fed. Cir. 2024); *see also BGT Holdings LLC v. United States*, 984 F.3d 1003, 1016–17 (Fed. Cir. 2020) (explaining that the duty of good faith and fair dealing is "preempt[ed]" when the contract itself provides the mechanism governing the dispute). Thus, in *Portland Mint*, the Federal Circuit recently held that a claim for breach of the implied duty must be dismissed when it overlaps with a breach-of-contract claim. *Portland Mint*, 102 F.4th at 1384.

The complaint at issue in *Portland Mint* presented similar breach of the duty of good faith and fair dealing allegations to those asserted here. There, the plaintiff first asserted a breach-of-contract claim. See *Portland Mint v. United States*, No. 20-518, ECF No. 54, Second Am. Compl. at 21–22; *compare* Compl. at ¶¶ 40-45, 66 (identifying the termination provisions in the grant agreement and alleging those provisions were breached). Instead of identifying any separate implied promises, the plaintiff in *Portland Mint* simply recited the legal standard for the

duty of good faith and fair dealing and then asserted that the Government had frustrated its "reasonable expectations of the fruits of the contract[.]" *Portland Mint*, Second Am. Compl. at 22–23; *compare* Compl. ¶ 76 (asserting that the termination "destroyed Plaintiff's reasonable expectations regarding the fruits of its Grant Agreement."). In both cases, the plaintiffs failed to identify any "reasonable expectations" that were distinct from those already encompassed in their breach-of-contract claims. As in this matter, the dispute in *Portland Mint* centered solely on whether the Government complied with the contract's express terms.

In *Portland Mint*, the Court dismissed the plaintiff's implied-duty claim under RCFC 12(b)(6) because it simply re-labeled its breach of contract claim as a breach of an implied duty. The Federal Circuit affirmed, establishing binding precedent that duplicative claims for breach of the duty of good faith and fair dealing cannot proceed. *Portland Mint*, 102 F.4th at 1384. The overlap between the two claims in this case is evident: to determine whether EPA breached the implied duty under plaintiff's theory, the Court would be required to interpret the termination provisions of the grant agreement—the same analysis necessary to resolve plaintiff's breach-of-contract claim. Put differently, adjudicating the implied-duty count would require the Court to interpret the same contract language in the same manner as required for the breach-of-contract count.

The Court should dismiss plaintiff's second count alleging breach of the implied duty of good faith and fair dealing. Plaintiff identifies no specific implied promise as required under Federal Circuit precedent and simply reasserts its challenge to the grant's express terms, improperly duplicating its Count I breach-of-contract claim.

**CONCLUSION**

For these reasons, we respectfully request that the Court dismiss the second count in

plaintiff's complaint, alleging breach of the duty of good faith and fair dealing.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

WILLIAM J. GRIMALDI
Assistant Director

/s/ Sean K. Griffin
SEAN K. GRIFFIN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
PO Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 451-7475

**INDEX TO THE APPENDIX**

Notice of Award, December 12, 2024 .......... Appx001

Termination Memorandum, May 1, 2025 .......... Appx008

# U.S. ENVIRONMENTAL PROTECTION AGENCY

## Grant Agreement

| | |
|---|---|
| **GRANT NUMBER (FAIN):** 97T28801<br>**MODIFICATION NUMBER:** 0<br>**PROGRAM CODE:** 5F | **DATE OF AWARD**<br>12/09/2024 |
| **TYPE OF ACTION**<br>New | **MAILING DATE**<br>12/12/2024 |
| **PAYMENT METHOD:**<br>ASAP | **ACH#**<br>9610 |

| | |
|---|---|
| **RECIPIENT TYPE:**<br>Not for Profit | **Send Payment Request to:**<br>Contact EPA RTPFC at: rtpfc-grants@epa.gov |
| **RECIPIENT:** | **PAYEE:** |
| Pacific International Center for High Technology Research<br>1440 KAPIOLANI BLVD STE 1410<br>HONOLULU, HI 96814-3607<br>**EIN:** 99-0242476 | Pacific International Center for High Technology Research<br>1440 KAPIOLANI BLVD STE 1410<br>HONOLULU, HI 96814-3607 |

| PROJECT MANAGER | EPA PROJECT OFFICER | EPA GRANT SPECIALIST |
|---|---|---|
| Keith Matsumoto<br>1440 KAPIOLANI BLVD.<br>SUITE 1410<br>HONOLULU, HI 96814-3607<br>**Email:** keith.matsumoto@pichtr.org<br>**Phone:** 808-258-9209 | Sydney Cunniff<br>1200 Pennsylvania Ave NW, ORD-1<br>Washington, DC 20460<br>**Email:** Cunniff.Sydney@epa.gov<br>**Phone:** 202-564-0868 | Mackenzie Whitby<br>Grants Branch, MSD-6-1<br>75 Hawthorne Street<br>San Francisco, CA 94105<br>**Email:** whitby.mackenzie@epa.gov<br>**Phone:** 415-972-3615 |

**PROJECT TITLE AND DESCRIPTION**

Inflation Reduction Act - Environmental and Climate Justice

See Attachment 1 for project description.

| BUDGET PERIOD | PROJECT PERIOD | TOTAL BUDGET PERIOD COST | TOTAL PROJECT PERIOD COST |
|---|---|---|---|
| 01/01/2025 - 12/31/2027 | 01/01/2025 - 12/31/2027 | $ 13,939,738.00 | $ 13,939,738.00 |

## NOTICE OF AWARD

Based on your Application dated 07/24/2024 including all modifications and amendments, the United States acting by and through the US Environmental Protection Agency (EPA) hereby awards $ 13,939,738.00. EPA agrees to cost-share 100.00% of all approved budget period costs incurred, up to and not exceeding total federal funding of $ 13,939,738.00. Recipient's signature is not required on this agreement. The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date. If the recipient disagrees with the terms and conditions specified in this award, the authorized representative of the recipient must furnish a notice of disagreement to the EPA Award Official within 21 days after the EPA award or amendment mailing date. In case of disagreement, and until the disagreement is resolved, the recipient should not draw down on the funds provided by this award/amendment, and any costs incurred by the recipient are at its own risk. This agreement is subject to applicable EPA regulatory and statutory provisions, all terms and conditions of this agreement and any attachments.

| ISSUING OFFICE (GRANTS MANAGEMENT OFFICE) | AWARD APPROVAL OFFICE |
|---|---|
| **ORGANIZATION / ADDRESS** | **ORGANIZATION / ADDRESS** |
| U.S. EPA, Region 9, U.S. EPA, Region 9 Grants Branch, MSD-6<br>75 Hawthorne Street<br>San Francisco, CA 94105 | U.S. EPA, Region 9, Environmental Justice, Community Engagement, and Environmental Review Division, CED-1<br>R9 - Region 9<br>75 Hawthorne Street<br>San Francisco, CA 94105 |

**THE UNITED STATES OF AMERICA BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY**

| | |
|---|---|
| **Digital signature applied by EPA Award Official** Carolyn Truong - Grants Management Officer | **DATE**<br>12/09/2024 |

# EPA Funding Information

| FUNDS | FORMER AWARD | THIS ACTION | AMENDED TOTAL |
|---|---|---|---|
| EPA Amount This Action | $ 0 | $ 13,939,738 | $ 13,939,738 |
| EPA In-Kind Amount | $ 0 | $ 0 | $ 0 |
| Unexpended Prior Year Balance | $ 0 | $ 0 | $ 0 |
| Other Federal Funds | $ 0 | $ 0 | $ 0 |
| Recipient Contribution | $ 0 | $ 0 | $ 0 |
| State Contribution | $ 0 | $ 0 | $ 0 |
| Local Contribution | $ 0 | $ 0 | $ 0 |
| Other Contribution | $ 0 | $ 0 | $ 0 |
| Allowable Project Cost | $ 0 | $ 13,939,738 | $ 13,939,738 |

| Assistance Program (CFDA) | Statutory Authority | Regulatory Authority |
|---|---|---|
| 66.616 - Environmental and Climate Justice Block Grant Program | Clean Air Act: Sec. 138 | 2 CFR 200, 2 CFR 1500 and 40 CFR 33 |

| Fiscal | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Site Name | Req No | FY | Approp. Code | Budget Organization | PRC | Object Class | Site/Project | Cost Organization | Obligation / Deobligation |
| - | 25125WB065 | 2226 | BSF5 | WF | 000W57XK1 | 4140 | - | - | $ 13,939,738 |
| | | | | | | | | | $ 13,939,738 |

Budget Summary Page

| Table A - Object Class Category (Non-Construction) | Total Approved Allowable Budget Period Cost |
|---|---|
| 1. Personnel | $ 726,923 |
| 2. Fringe Benefits | $ 344,779 |
| 3. Travel | $ 0 |
| 4. Equipment | $ 4,900,000 |
| 5. Supplies | $ 18,000 |
| 6. Contractual | $ 566,377 |
| 7. Construction | $ 871,378 |
| 8. Other | $ 5,418,511 |
| 9. Total Direct Charges | $ 12,845,968 |
| 10. Indirect Costs: 0.00 % Base | $ 1,093,770 |
| 11. Total (Share: Recipient 0.00 % Federal 100.00 %) | $ 13,939,738 |
| 12. Total Approved Assistance Amount | $ 13,939,738 |
| 13. Program Income | $ 0 |
| 14. Total EPA Amount Awarded This Action | $ 13,939,738 |
| 15. Total EPA Amount Awarded To Date | $ 13,939,738 |

# Attachment 1 - Project Description

This agreement provides funding under the Inflation Reduction Act (IRA) to Pacific International Center for High Technology Research. Specifically, the project will support community-based climate resilience by initiating an off-grid power supply, sustainable on-site agriculture, green firebreaks, reforestation, and green stormwater infrastructure at the Pu'uhonua O Wai'anae (POW) village.

This assistance agreement provides full federal funding in the amount of $13,939,738. See terms and conditions.

The activities to be performed include installation of renewable energy microgrid and containerized farm, land restoration to mitigate wildfire risk, identify opportunities for green stormwater infrastructure, and community engagement, education, and workforce development.

The anticipated deliverables include start-up of 5 microgrids and 3 containerized farms at POW village, propagation of native plants to use for reforestation and creation of green firebreaks, watershed management utilizing green stormwater infrastructure, and community involvement, education, and training. The expected outcomes include reduced dependence on fossil-fuel electric grid, community-based resilience during extreme weather events and climate conditions, improved food security, reduced wildfire risk, removal of invasive plants and introduction of native and culturally-significant plants, reduced flooding and improved groundwater recharge, pollution mitigation of contaminants in stormwater from entering waterways, reduction of greenhouse gas emissions, and environmental stewardship and climate readiness among the community. The intended beneficiaries are disadvantaged communities.

Malama Learning Center will receive $1,529,816 to grow native and cultural plants, teach others to grow plants, transfer agroforestry knowledge, build new green breaks, support the care of the kpuka, and manage and supervise paid apprentices.

Kaala Farms will receive $1,353,671 to work in collaboration with Malama Learning Center to provide land, cultural connections, a living laboratory of biocultural innovation, supervise the paid assistant, and support the building of new green banks.

Dynamic Community Solutions will receive $1,628,000 to install solar batteries/microgrids at POW village, train and employ residents on the installation, maintenance, and operations of microgrid and farms, and develop ongoing education and training programs.

PLACES Hawaii will receive $893,024 to work on community engagement efforts for the development of teaching materials and supporting school and community education programs.

# Administrative Conditions

## General Terms and Conditions

The recipient agrees to comply with the current Environmental Protection Agency (EPA) general terms and conditions available at: https://www.epa.gov/grants/epa-general-terms-and-conditions-effective-october-1-2024-or-later

These terms and conditions are in addition to the assurances and certifications made as a part of the award and the terms, conditions, or restrictions cited throughout the award.

The EPA repository for the general terms and conditions by year can be found at: https://www.epa.gov/grants/grant-terms-and-conditions#general.

## A. Federal Financial Reporting (FFR)

For awards with cumulative project and budget periods greater than 12 months, the recipient will submit an annual FFR (SF 425) covering the period from the project/budget period start date to **September 30** of each calendar year to the EPA Finance Center in Research Triangle Park, NC. The annual FFR will be submitted electronically to rtpfc-grants@epa.gov no later than **December 30** of the same calendar year. Find additional information at https://www.epa.gov/financial/grants. (Per 2 CFR § 200.344(b), the recipient must submit the Final FFR to rtpfc-grants@epa.gov within 120 days after the end of the project period.)

## B. Procurement

The recipient will ensure all procurement transactions will be conducted in a manner providing full and open competition consistent with 2 CFR § 200.319. In accordance with 2 CFR § 200.324, the recipient and subawardee(s) must perform a cost or price analysis in connection with applicable procurement actions, including contract modifications. *State and Tribal government entities must follow procurement standards as outlined in 2 CFR § 200.317.*

## C. MBE/WBE Reporting, 40 CFR, Part 33, Subpart E (EPA Form 5700-52A)

The recipient agrees to submit a “MBE/WBE Utilization Under Federal Grants and Cooperative Agreements” report (EPA Form 5700-52A) annually for the duration of the project period. The current EPA Form 5700-52A with instructions is located at https://www.epa.gov/grants/epa-grantee-forms

This provision represents an approved exception from the MBE/WBE reporting requirements as described in 40 CFR Section 33.502.

Reporting is required for assistance agreements where funds are budgeted for procuring construction, equipment, services and supplies (including funds budgeted for direct procurement by the recipient or procurement under subawards or loans in the “Other” category) with a cumulative total that exceed the **Simplified Acquisition Threshold (SAT) currently set at $250,000** (the dollar threshold will be automatically revised whenever the SAT is adjusted; See 2 CFR Section 200.1), including amendments and/or modifications. All procurement actions are reportable when reporting is required, not just the portion which exceeds the SAT.

Recipients with expended and/or budgeted funds for procurement are required to report annually whether the planned procurements take place during the reporting period or not. If no budgeted procurements take place during the reporting period, the recipient should check the box in section 4A when completing the form.

When completing the annual report, recipients are instructed to check the box titled “annual” in section 1B of the form. For the final report, recipients are instructed to check the box indicated for the “Final Report (project completed)” in section 1B of the form.

The annual reports are due by October 30th of each calendar year and the final report is due within 120 days after the end of the project period, whichever comes first. The recipient will submit the MBE/WBE report(s) and/or questions to GrantsRegion9@epa.gov and the EPA Grants Specialist identified on page 1 of the award document.

**D. Subaward(s)**

The recipient's approved budget includes subaward(s). As applicable, the recipient will comply with the General Term and Condition on reporting of first tier subawards to www.fsrs.gov per “Reporting Subawards and Executive Compensation” requirement.

## Programmatic Conditions

The recipient agrees to comply with the current EPA Community Change Grants Programmatic Terms and Conditions, available at: https://www.epa.gov/inflation-reduction-act/epa-community-change-grants-program-terms-and-conditions.

These terms and conditions are in addition to the General Terms and Conditions, additional programmatic terms and conditions, and the administrative terms and conditions included in the EPA award document.

**** END OF DOCUMENT ****

OFFICE OF MISSION SUPPORT
WASHINGTON, D.C. 20460

May 1, 2025

**MEMORANDUM**

**SUBJECT:** Termination of EPA Assistance Agreement No. 5F-97T28801-1 under 2 CFR 200.340

**FROM:** EPA Award Official

**TO:** Janel Pang, Vice President, CFO & Contracts Officer
Pacific International Center for High Technology Research

The purpose of this communication is to notify you that the U.S. Environmental Protection Agency (EPA) is hereby terminating Assistance Agreement No. 5F-97T28801-1 awarded to Pacific International Center for High Technology Research. This EPA Assistance Agreement is terminated effective immediately on the grounds that the remaining portion of the Federal award will not accomplish the EPA funding priorities for achieving program goals. The objectives of the award are no longer consistent with EPA funding priorities.

The EPA Administrator has determined that, per the Agency's obligations to the constitutional and statutory law of the United States, this priority includes ensuring that the Agency's grants do not conflict with the Agency's policy of prioritizing merit, fairness, and excellence in performing our statutory functions. In addition to complying with the law, it is vital that the Agency assess whether all grant payments are free from fraud, abuse, waste, and duplication, as well as to assess whether current grants are in the best interests of the United States.

The process for closeout is generally outlined in 2 CFR 200.344. EPA is clarifying what reports are required and what reports are waived below. Other requirements are still in effect if applicable to your grant.

EPA is requiring the following closeout reports due within 120 days of closeout (2 CFR 200.344a):

- Final Federal Financial Report, SF-425
- Final Technical Report
- Other programmatic reports identified in your terms and conditions

As part of this termination, EPA is waiving the following closeout reports:

- Property Report, SF-428
- Final Minority Business Enterprise/Woman Business Enterprise Utilization Under Federal Grants and Cooperative Agreements, EPA Form 5700-52A

The recipient may request payment from the Automated Standard Application Payments (ASAP) system for allowable costs incurred up to the date of this memo provided that such costs were contained in the approved workplan. Costs incurred by you after this termination are allowable only if (a) those costs were properly incurred by you before the effective date of this termination, and not in anticipation of it; and (b) those costs would be allowable if your federal award was not suspended or expired normally at the end of the period of performance in which the termination takes effect. *See* 2 C.F.R. § 200.343. You are encouraged to carefully

review and discharge your closeout responsibilities set forth in 2 C.F.R. § 200.344-45 and your award agreement. Those responsibilities include, but are not limited to, your obligation to "promptly refund any unobligated funds" that have been paid out but "are not authorized to be retained." *See* 2 C.F.R. § 200.344(g).

Also, per 2 CFR 200.472, a recipient may use grant funds to properly closeout their grant including reasonable and necessary costs that might occur after the date of this memo. If the recipient drew down funds from ASAP for costs beyond the termination date or for costs that exceed the amount necessary to properly closeout their grant, the recipient must contact RTPFC at rtpfc-grants@epa.gov for instructions on how to return the excess funds.

The EPA Grants Management Office has issued an amendment to the agreement to document the termination.

If you wish to dispute this termination decision, the Disputes Decision Official (DDO), Josh F.W. Cook, must receive the Dispute no later than 30 calendar days from the date this termination notice is electronically sent to you. Disputes must be sent electronically by email to the DDO at grantsregion9@epa.gov , with a copy to the EPA Award Official, mendiola.angela@epa.gov within the 30-day period stated above. The Dispute submitted to the DDO must include: (1) A copy of the disputed Agency Decision; (2) A detailed statement of the specific legal and factual grounds for the Dispute, including copies of any supporting documents; (3) The specific remedy or relief you seek under the Dispute; and (4) The name and contact information, including email address, of your designated point of contact for the Dispute. *See* 2 CFR 1500.15

The requirements on post-closeout adjustments and continuing responsibilities, including audit and record retention requirements, at 2 CFR 200.345 remain in effect.

ATTACHMENT
Amendment Document

Cc: Keith Matsumoto, Programs Director
Dominique Smith, EPA Project Officer
Mackenzie Whitby, EPA Grant Specialist