**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**PACIFIC INTERNATIONAL CENTER FOR HIGH TECHNOLOGY RESEARCH,**

***Plaintiff,***

**v.**

**UNITED STATES OF AMERICA,**

***Defendant.***

**Case No. 1:26-cv-00924-LAS**
**Senior Judge Loren A. Smith**

# PLAINTIFF'S RESPONSE TO *DEFENDANT'S PARTIAL MOTION TO DISMISS*

Amy E. Powell
Kunyu Ching
Alexis Daniel
LAWYERS FOR GOOD GOVERNMENT
1319 F St. NW, Suite 301
PMB 181
Washington, DC 20004
Phone: 404-913-5529 (Main)
Phone: 646-246-4633 (Amy Powell)
amy@lawyersforgoodgovernment.org
kunyu@lawyersforgoodgovernment.org
alexis@lawyersforgoodgovernment.org

# Table of Contents


Table of Authorities ........ 3

Preliminary Statement ........ 5

Questions Presented ........ 5

Background ........ 5

Argument ........ 8

I. Standard of Review ........ 8

II. The Court should deny Defendant's Partial Motion to Dismiss ........ 9

a. The Complaint adequately alleges that Defendant breached the duty of good faith and fair dealing. ........ 9

b. The Complaint adequately identifies a "specific implied promise" that was breached. ........ 11

c. The Court should not dismiss Plaintiff's implied duty claim as redundant of its breach of contract claim. ........ 16

d. Defendant's request is particularly inappropriate at this stage in litigation, but any dismissal should be without prejudice and with leave to amend. ........ 19

Conclusion ........ 20

# Table of Authorities

**Cases**

*AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27 (Fed. Cir. 2024)....................7

*Aries Constr. Corp. v. United States*, 164 Fed. Cl. 290 (2023)....................18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................7

*ASI Constructors, Inc. v. United States*, 129 Fed. Cl. 707 (2016)....................17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....................7, 8

*BGT Holdings LLC v. United States*, 984 F.3d 1003 (Fed. Cir. 2020)....................15

*Centex Corp. v. United States*, 395 F.3d 1283 (Fed. Cir. 2005)....................9, 13

*Dobyns v. United States*, 915 F.3d 733 (Fed. Cir. 2019)....................passim

*Fishermen's Finest, Inc. v. United States*, 59 F.4th 1269 (Fed. Cir. 2023)....................8

*Hamilton Square, LLC v. United States*, 160 Fed. Cl. 617 (2022)....................19

*Iron Bow Techs., LLC v. United States*, 183 Fed. Cl. 315 (2026)....................17

*Kogan v. United States*, 112 Fed. Cl. 253 (2013)....................18

*Laborant, LLC v. United States*, 180 Fed. Cl. 76 (2026)....................19

*Lakeshore Eng'g Servs., Inc. v. United States*, 748 F.3d 1341 (Fed. Cir. 2014)....................17

*Metcalf Constr. Co. v. United States*, 742 F.3d 984 (Fed. Cir. 2014)....................9, 11, 13

*Metricolor LLC v. L'Oreal S.A.*, 791 F. App'x 183 (Fed. Cir. 2019)....................19

*Mutakaber v. Sec'y of State*, 162 F.4th 1141 (Fed. Cir. 2025)....................14

*Portland Mint v. United States*, 102 F.4th 1371 (Fed. Cir. 2024)....................15, 16

*Portland Mint*, 160 Fed. Cl. 642 (2022)....................16

*Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817 (Fed. Cir. 2010)....................9, 13, 14

*Seneca Glob. Servs., LLC v. United States*, No. 25-195C, 2026 WL 2947660 (Fed. Cl. Sept. 30, 2026)....................15

*Skinner v. Switzer*, 562 U.S. 521 (2011)....................7

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308 (2007)....................8

**Statutes**

Pub. L. 117-169, 136 Stat. 1818 (2022) ........................................................................... 5

**Rules**

RCFC 12(b)(6) ............................................................................................................... 7

RCFC 8(a)(2) ................................................................................................................. 7

## PRELIMINARY STATEMENT

This case arises from Defendant's unlawful decision to terminate a grant awarded to Plaintiff Pacific International Center for High Technology Research under the Environmental Protection Agency's Environmental and Climate Justice Community Change Grants Program, as well as Defendant's actions to interfere with Plaintiff's execution of the project plans outlined in the parties' grant agreement. *Defendant's Partial Motion to Dismiss* ("Motion") does not attack Plaintiff's claim for breach of contract—a tacit acknowledgment that a valid and enforceable contract between the parties exists. Nor does Defendant contest that Plaintiff has sufficiently alleged that the termination of the grant agreement constitutes an unlawful breach of contract. Instead, Defendant argues that Plaintiff has not properly alleged a breach of the implied duty of good faith and fair dealing, an argument the Court should reject because the Complaint more than adequately satisfies the pleading standard.

## QUESTIONS PRESENTED

1. Whether the Complaint adequately alleges a violation of the implied duty of good faith and fair dealing where it sets forth factual allegations establishing that Defendant interfered with Plaintiff's performance and destroyed Plaintiff's reasonable expectations under the contract?

2. Whether the Complaint sufficiently identifies an implied promise where it tethers Defendant's implied duties to the contract's provisions?

3. Whether a claim that adequately alleges Defendant breached its implied duties should be dismissed as redundant if the Complaint also adequately alleges a breach of contract claim?

## BACKGROUND

On August 16, 2022, Congress enacted the Inflation Reduction Act ("IRA"). Pub. L. 117-

169, 136 Stat. 1818 (2022). The IRA created the Environmental and Climate Justice Program ("ECJP")—the largest investment in environmental and climate justice in U.S. history. Compl. ¶ 16, ECF No. 1 at 4. Under this program, Congress directed the Environmental Protection Agency ("EPA") to award $2.8 billion in grants to help disadvantaged communities address a wide range of environmental and climate justice issues. *Id.* at 4 (¶¶ 17-18). In implementing the ECJP, EPA created four grant programs, including the Community Change Grants ("CCG") program. The CCG program funds multi-faceted community-driven projects that enhance climate resiliency, mitigate climate and health risks, engage in community-led air and water pollution monitoring, and support workforce development for greenhouse gas reduction and pollution abatement in disadvantaged communities most burdened by environmental and health harms. *Id.* at 4 (¶ 19).

In response to EPA's Notice of Funding Opportunity ("NOFO"), Plaintiff applied for a competitive CCG grant in July 2024 and submitted its grant proposal titled "Uplifting the Wai'anae Community for Resilience and Vibrance" ("Uplifting Wai'anae"). *Id.* at 5 (¶ 25). The proposal identified strategies and project tasks designed to counter climate-related threats to the Wai'anae community, a historically disadvantaged community in Hawai'i. *Id.* at 5 (¶¶ 22, 25). The proposal included a range of resilience initiatives, including innovative containerized agricultural technologies, micro-grid systems, pollution mitigation, stormwater abatement, native and food plant reforestation, wildfire mitigation, and workforce development. *Id.* at 5-6 (¶ 25).

On December 12, 2024, Plaintiff received a Notice of Award and Grant Agreement from EPA. *Id.* at 6 (¶ 26). The Grant Agreement contained a provision by which EPA agreed to make a specified amount of federal funds ($13,939,738) available to Plaintiff to support its Uplifting Wai'anae project. *Id.* at 6, 14 (¶¶ 26, 73). EPA obligated the full grant amount in January 2025 and made it available through the Automated Standard Application Payments ("ASAP") system.

*Id.* at 6 (¶ 26). Shortly thereafter, Plaintiff commenced work under the Grant Agreement and began drawing down grant funds. *Id.* at 6 (¶ 28).

Despite this trouble-free performance, however, EPA nonetheless targeted Plaintiff's grant for termination. On February 25, 2025, EPA Assistant Deputy Administrator Travis Voyles reviewed existing grant programs administered by EPA for consistency with Agency policy priorities and decided that the ECJP should be terminated for policy reasons. *Id.* at 6 (¶ 29).

In March 2025, EPA suspended Plaintiff's ASAP account without prior notice, explanation, or regard for any pending costs Plaintiff had already committed to incurring in reliance on the funds' availability. *Id.* at 6 (¶ 30). The suspension prevented Plaintiff from accessing its grant funds, effectively seizing these funds and leaving Plaintiff unable to perform project work. *Id.* at 10 (¶ 47). The ASAP account was briefly opened for one day on May 1, 2025, allowing Plaintiff to draw down a second payment from the account. The ASAP account was then immediately suspended again, cutting off Plaintiff's access to the grant funds. *Id.* at 6 (¶ 30).

That same day, EPA notified Plaintiff that it was unilaterally terminating the Grant Agreement "effective immediately" and ordered Plaintiff to stop working, even though Plaintiff was fully complying with the NOFO and the Agreement's terms and conditions. *Id.* at 7–8 (¶¶ 31, 39). The sole reason EPA gave for the termination was that the grant award was "no longer consistent" with EPA funding priorities. *Id.* at 8 (¶ 40). The general and programmatic terms and conditions applicable to the Grant Agreement, however, specified that Plaintiff's award could be unilaterally terminated by EPA only in the event of Plaintiff's noncompliance with the Agreement or as a result of adequate evidence of fraud, waste, or abuse by Plaintiff. *Id.* at 7–9 (¶¶ 36-38, 42). EPA never notified Plaintiff of any purported failure to comply with the Grant Agreement's terms or purported fraud, waste, or abuse. *Id.* at 9 (¶ 43).

Plaintiff's ASAP account was reopened once more on March 17, 2026, before EPA suspended it yet again. *Id.* at 7 (¶ 32). To date, Plaintiff has received only $165,462.49, a mere fraction of the nearly $14 million promised and owed under the Grant Agreement. *Id*. Defendant's unlawful interference with and termination of the Grant Agreement prevented Plaintiff from proceeding with or completing project work supported by the grant. *Id.* at 10-11 (¶¶ 48–54).

On June 26, 2026, Plaintiff filed its *Complaint* in this Court. The Complaint alleges that the United States committed a breach of contract through its unlawful termination of the Grant Agreement (Count I). The Complaint also alleges that the United States breached its implied duty of good faith and fair dealing by interfering with Plaintiff's performance under the contract (Count II). Defendant does not dispute that Plaintiff has properly stated a claim for breach of contract but has moved to dismiss Plaintiff's implied duty claim.

## ARGUMENT

### I. Standard of Review

Rule 8(a)(2) of the Rules of the U.S. Court of Federal Claims (RCFC) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Like its counterpart in the Federal Rules of Civil Procedure, RCFC 8(a)(2) is governed by the familiar pleading standard articulated in *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 39 (Fed. Cir. 2024), which explains that FRCP 8(a)(2) "generally requires only a plausible short and plain statement of the plaintiff's claim" (quoting *Skinner v. Switzer*, 562 U.S. 521, 530 (2011)). A plaintiff need not plead "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss under RCFC 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a motion to dismiss for failure to state a claim, the Court "must accept as true all the factual allegations" and "must indulge all reasonable inferences in favor of the non-movant." *Fishermen's Finest, Inc. v. United States*, 59 F.4th 1269, 1274 (Fed. Cir. 2023). The Court "must consider the complaint in its entirety," including "documents incorporated into the complaint by reference[.]" *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

## II. The Court should deny ***Defendant's Partial Motion to Dismiss*.**

The Court should deny Defendant's Motion. Plaintiff adequately alleges that Defendant violated the implied covenant of good faith and fair dealing when it interfered with Plaintiff's execution of the Uplifting Wai'anae project and destroyed Plaintiff's reasonable expectations under the Grant Agreement. Defendant's Motion only half-heartedly challenges Plaintiff's implied duty claim, offering semi-accurate recitations of legal principles but stopping well short of applying relevant principles to Plaintiff's allegations. Contrary to Defendant's assertions, the Complaint properly identifies a "specific implied promise" that was breached, and the implied duty claim should not be dismissed as "redundant." Moreover, dismissal of Plaintiff's implied duty claim at this stage would be premature.

### a. The Complaint adequately alleges that Defendant breached the duty of good faith and fair dealing.

Plaintiff sufficiently alleges that Defendant violated the duty of good faith and fair dealing by interfering with Plaintiff's performance under the Grant Agreement and by upsetting Plaintiff's reasonable expectation that it would maintain access to the promised grant funds.

"Every contract, including one with the federal government, imposes upon each party an implied duty of good faith and fair dealing in its performance and enforcement." *Dobyns v. United*

*States*, 915 F.3d 733, 739 (Fed. Cir. 2019). "The covenant . . . imposes obligations on both contracting parties that include the duty not to interfere with the other party's *performance* and not to act so as to destroy the *reasonable expectations* of the other party regarding the *fruits of the contract.*" *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014) (quoting *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005)) (emphasis added by *Metcalf*). "What [the] duty entails depends in part on what that contract promises (or disclaims)[,]" but it includes "[b]oth the duty not to hinder and the duty to cooperate[.]" *Id.* at 991 (quoting *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 830 (Fed. Cir. 2010)). In sum, "the implied duty exists because it is rarely possible to anticipate in contract language every possible action or omission by a party that undermines the bargain[.]" *Dobyns*, 915 F.3d at 739.

Here, the Grant Agreement imposed specific obligations on the government: namely, to provide funding to Plaintiff so that Plaintiff could execute the Uplifting Waiʻanae project plans set forth in the Grant Agreement. Not only was Defendant obligated to observe the express terms of that Grant Agreement, including the provisions requiring it to provide grant funding and limiting its right to unilaterally terminate the contract, Defendant was prohibited from "interfering with" or "hindering" Plaintiff's performance of the project plans. *Metcalf Constr. Co.*, 742 F.3d at 990.

Defendant nonetheless undermined the promises made in the Grant Agreement by freezing Plaintiff's ASAP account prior to the termination, effectively blocking Plaintiff's access to the funds necessary to perform the project work contemplated in the Grant Agreement. Defendant did so abruptly and without any advance notice to Plaintiff or consideration of work Plaintiff had already performed. Compl. ¶¶ 30, 47, ECF No. 1 at 6, 10. These actions interfered with Plaintiff's capacity to implement the Uplifting Waiʻanae project and destroyed Plaintiff's reasonable expectation that Plaintiff would maintain access to the funds promised to it. *Id.* at 6, 10–11, 14–15

(¶¶ 30, 47–54, 73–77). These allegations alone are sufficient to state a claim for breach of the implied duty of good faith and fair dealing.

In addition to denying Plaintiff access to funds in its ASAP account and preventing Plaintiff from spending money already awarded to it, Defendant interfered with Plaintiff's capacity to execute Uplifting Waiʻanae project plans in various other ways that support Plaintiff's claim, including by targeting the Grant Agreement for unilateral termination, directing Plaintiff to stop work under the Agreement, unilaterally imposing new contract terms and conditions, and refusing to meaningfully engage in the administrative dispute process, for example, by insisting that the grant funds already awarded to Plaintiff were somehow unobligated, notwithstanding this was not EPA's stated justification for termination and despite factual and legal support to the contrary. *Id.* at 15 (¶ 75). Though Plaintiff's claim is sufficiently pled as is, Plaintiff can expand upon these allegations, if the Court deems it necessary.

It is telling that Defendant's Motion ignores the Complaint's allegations relating to Defendant's interference with the project funds and Plaintiff's related efforts toward executing Uplifting Waiʻanae. These allegations are fatal to Defendant's theories—notwithstanding the other flaws in Defendant's motion, addressed in detail below. To that end, Defendant's assertion that Plaintiff's implied duty theory lacks clarity is also without merit. Plaintiff's theory is simple: Where the government contracts with a party to fund certain programming, the government cannot hinder the party's ability to provide that programming by inexplicably suspending access to the promised award money necessary to finance that program, short of breaching the implied duty of good faith and fair dealing. *Id.* at 14–15 (¶¶ 73-77).

**b. The Complaint adequately identifies a "specific implied promise" that was breached.**

Plaintiff's Complaint sufficiently alleges a "specific implied promise" that was breached.

ECF No. 11 at 5. Defendant promised to provide funding for Uplifting Wai‘anae. Compl. ¶ 73, ECF No. 1 at 14. Defendant also promised to terminate the Grant Agreement only if certain conditions were met. *Id.* at 7–9 (¶¶ 36–38, 42). Implicit in these promises were Defendant's duties: not to interfere with Plaintiff's access to the awarded funds; not to hinder Plaintiff's execution of Uplifting Wai‘anae; and not to otherwise destroy Plaintiff's reasonable expectations under the contract. *Metcalf Constr. Co.*, 742 F.3d at 990.

To the extent Defendant asserts that Plaintiff must identify an implied promise within the Grant Agreement with greater specificity, Defendant is wrong. The Federal Circuit has rejected such an "unduly narrow view" of the duty of good faith and fair dealing, recognizing that the implied duty is just that—implied. *Id.* at 994. Accordingly, a "breach of the *implied* duty . . . does not require violation of an *express* provision in the contract." *Id.* (emphasis in original). Requiring Plaintiff to "identify a contract provision that" Defendant violated "goes too far." *Id.*

The Federal Circuit's decision in *Dobyns* does not alter this straightforward analysis. 915 F.3d at 733. *Dobyns* simply illustrates that the implied duty must be sufficiently "tether[ed] to the contract terms" but cannot go beyond those provisions to "alter[] the contractual allocation of the burdens and benefits." *Id.* at 740–41. A quick review of *Dobyns* reveals it is readily distinguishable from the circumstances presented here.

In *Dobyns*, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") executed a settlement agreement with its agent after his identity was allegedly disclosed in the aftermath of an undercover operation. *Id.* at 736. The agreement compensated the agent and required the government to "comply with all laws regarding or otherwise affecting the Employee's employment by the Agency" but made "no future promises regarding how the government would ensure the safety of [plaintiff]." *Id.* at 740. The agent thereafter accused ATF of violating the settlement

agreement when the agency withdrew the agent's fictitious identity and allegedly failed to appropriately respond to an act of arson at the agent's home. *Id.* The Federal Circuit ultimately held that the Court of Federal Claims erred by reviewing parol evidence outside the contract—notwithstanding the contract's integration clause—to impose vague obligations on the government to guarantee the agent's safety that "went well beyond those contemplated in the express contract" and "without grounding the supposed duties in the specific provisions of the contract." *Id.* at 740. The Federal Circuit observed that while the agreement required ATF to review findings related to threat assessments, it did not impose any broader duties to protect the agent. The Federal Circuit thus declined to interpret the implied duty as imposing a general duty of protection that lacked "a tether to the contract terms" and "would fundamentally alter the balance of risks and benefits associated with the [] agreement." *Id.* at 740.

By contrast, here, the implied obligations Plaintiff's Complaint seeks to impose—*i.e.*, a duty not to interfere with Plaintiff's access to the grant funds and its ability to execute the Uplifting Wai'anae project—are contemplated by the Grant Agreement, which expressly entitled Plaintiff to funding for Uplifting Wai'anae. This interpretation of the implied duty does not "fundamentally alter" the bargain struck between Defendant and Plaintiff. Rather, it merely enforces the expectations contemplated by the Grant Agreement's plain terms, including Plaintiff's reasonable expectation that Defendant would not interfere with Plaintiff's ability to use the funds, either by meddling with Plaintiff's ASAP account or by unlawfully terminating the Grant Agreement in a manner neither contemplated nor permitted under the contract. Defendant offers *no* explanation as to how these allegations are not sufficiently tethered to the Grant Agreement's provisions.

Defendant also overstates the holding of *Dobyns*, asserting that the Federal Circuit held that the implied duty cannot be "used to infer new obligations beyond the contract's terms." ECF

No. 11 at 11 (citing *Dobyns*, 915 F.3d at 739–40). But that is not what the *Dobyns* court said. Instead, the court focused on the parties' reasonable expectations surrounding the contract. *Dobyns*, 915 F.3d at 739–40. Moreover, the Federal Circuit has made clear the implied duty may encompass duties not stated in the contract's terms, so long as the duty does not "expand a party's contractual duties" to "create obligations not contemplated" by the contract or that are "inconsistent with the contract's provisions." *Id.* (quoting *Precision Pine*, 596 F.3d at 831); *Metcalf Constr. Co.*, 742 F.3d at 991 (explaining that the implied duty "prevents a party's acts or omissions that, though not proscribed by the contract expressly, are inconsistent with the contract's purpose"). In other words, an "implied" duty may very well "expand[] the express duties," and the Federal Circuit's "formulation means simply that an act will not be found to violate the [implied] duty . . . if such a finding would be at odds with the terms of the original bargain, whether by altering the contract's discernible allocation of risks and benefits or by conflicting with a contract provision." *Metcalf Constr. Co.*, 742 F.3d at 991 (internal quotations omitted) (rejecting government's "constraining view" of Federal Circuit precedent).

To be clear, Plaintiff's Complaint does not impose any duties that run afoul of the Grant Agreement's provisions, as the Grant Agreement unequivocally contemplated that Plaintiff would maintain access to the grant funds except in defined circumstances not present here. Plaintiff seeks only to hold Defendant accountable for "interfering with the plaintiffs' enjoyment of the benefits contemplated by the contract," including access to and use of grant funds to which it was contractually entitled, "which is among the core functions served by the implied covenant of good faith and fair dealing." *Centex Corp. v. United States,* 395 F.3d 1283, 1306 (Fed. Cir. 2005). *Dobyns* thus has little utility here, where Plaintiff's implied duty claim is wholly consistent with the terms of the Grant Agreement.

The Federal Circuit's decision in *Precision Pine* is similarly unhelpful to Defendant's Motion. 596 F.3d at 831. There, the Federal Circuit affirmed dismissal of an implied duty claim where the challenged conduct—allegedly unreasonable delays in the government's execution of a court order, hindering the plaintiff's contracted right to harvest timber—was expressly authorized by the contract, which permitted the government to indefinitely suspend timber-harvesting operations to comply with court orders. The Federal Circuit concluded that the plaintiff had "no reasonable expectation" of "uninterrupted performance" and that adopting the plaintiff's approach would create a duty "inconsistent with the contract's provisions." *Id.* at 831.

Unlike in *Precision Pine*, the Grant Agreement here did not authorize the alleged misconduct. Rather, the Grant Agreement defined the limited circumstances where Defendant could terminate the Grant Agreement, and Defendant does not dispute that EPA violated those provisions when it terminated the Grant Agreement for "policy" reasons. Defendant also does not dispute that EPA interfered with Plaintiff's performance of the contract as early as March 2025, even though no provision in the Grant Agreement permitted Defendant to restrict Plaintiff's access to its grant funds or to take the myriad of other actions that interfered with Plaintiff's performance under the Grant Agreement both before and after termination. Defendant's position that Plaintiff's implied duty claim somehow "avoid[s] the contract's plain language" is thus baseless. ECF No. 11 at 12.

Defendant cites a handful of other cases without offering any analysis or application to the allegations in the Complaint. Like *Dobyns* and *Precision Pine*, these cases may support established, non-controversial principles, but Defendant is unable to explain the relevancy of these decisions to *this* case. *See, e.g.*, *Mutakaber v. Sec'y of State*, 162 F.4th 1141, 1150 (Fed. Cir. 2025) (concluding that plaintiff could not impose implied duty that was "inconsistent" with contract's

provision); *BGT Holdings LLC v. United States*, 984 F.3d 1003, 1016 (Fed. Cir. 2020) (reiterating that parties to a contract "cannot use the doctrine of good faith and fair dealing to complain of the very conduct that the contract expressly permits"); *Seneca Glob. Servs., LLC v. United States*, No. 25-195C, 2026 WL 2947660, at *42 (Fed. Cl. Sept. 30, 2026) (recognizing that the plaintiff could not invoke the implied duty to force the agency to execute option years where the contract "explicitly granted defendant discretion to decide whether or not to exercise" the option years). Because Defendant does not—and cannot—assert that the Grant Agreement permits the misconduct alleged in Plaintiff's Complaint, nor that the implied duty allegations are inconsistent with the Grant Agreement's provisions, these cases provide little to no value here.

**c. The Court should not dismiss Plaintiff's implied duty claim as redundant of its breach of contract claim.**

The Court should reject Defendant's request to dismiss Plaintiff's implied duty claim as redundant of its breach of contract claim.

As a preliminary matter, Defendant's theory is flawed from the outset. Defendant asserts the implied duty claim "should be dismissed because it merely restates plaintiff's breach-of-contract claim, advancing the same basic claims through a separate count *that is foreclosed by the grant's express terms*." ECF No. 11 at 14 (emphasis added). But Defendant never identifies any provision in the Grant Agreement that "forecloses" either of Plaintiff's claims.

Notwithstanding the faulty premise of Defendant's argument, the Federal Circuit's decision in *Portland Mint* does not resolve this dispute, as Defendant suggests, providing minimal analysis of the implied duty doctrine. *Portland Mint v. United States*, 102 F.4th 1371, 1384 (Fed. Cir. 2024). The Federal Circuit instead largely focused on whether the plaintiff coin processor adequately alleged an implied-in-fact contract against the U.S. Mint based on the agency's implementing regulations. *Id.* at 1378–84. After a lengthy analysis finding that the coin processor

had satisfactorily stated a breach of contract claim, the Federal Circuit went on to dismiss the implied duty claim in a single sentence at the end of the opinion. *Id.* at 1384. The Federal Circuit summarily concluded that the implied duty claim was "based on the same facts" as the contract claim and thus should be dismissed as "redundant." *Id.* The opinion does not identify what facts the plaintiff relied upon in asserting the implied duty claim, or what implicit promise was allegedly breached that was duplicative of the contract claim. The Federal Circuit's decision thus offers little insight into when a breach of contract claim might preclude a breach of an implied duty—presenting, at most, a highly cursory application of a potential rationale for dismissing an implied duty claim.

Additionally, in relying on *Portland Mint*, Defendant misstates the Court of Federal Claims' analysis. Defendant asserts that "the [Claims] Court dismissed the plaintiff's implied duty claim . . . because it simply re-labeled its breach of contract claim as a breach of an implied duty claim" and that "[t]he Federal Circuit affirmed" that ruling. ECF No. 11 at 15. Defendant's reading is incorrect. The Court of Federal Claims had nothing to say about "re-labeling" or dismissing "redundant" implied duty claims. *See Portland Mint*, 160 Fed. Cl. 642, 671 (2022), *aff'd in part, rev'd in part and remanded,* 102 F.4th 1371 (Fed. Cir. 2024). Instead, the Court of Federal Claims dismissed plaintiff's breach of contract claim on the grounds that there was no contract between the parties (which the Federal Circuit subsequently reversed). Because there was no contract to which the implied duty could attach, the Court of Federal Claims also dismissed the implied duty claim. *Portland Mint*, 160 Fed. Cl. at 671.

In any event, *Portland Mint* is not dispositive here, even if the Court agrees with Defendant's conclusion that a "redundant" implied duty claim must be dismissed. Plaintiff's allegations go beyond merely restating its breach of contract claim based on Defendant's unlawful

termination of the grant. Plaintiff expressly alleges that Defendant interfered with its performance of the Grant Agreement and its ability to execute the Uplifting Wai‘anae project plans by suspending access to Plaintiff's ASAP account prior to and independent of the unlawful termination.

In these circumstances, where the Plaintiff's implied duty claim "relies upon additional facts" beyond the allegations of contract breach, this Court has correctly declined to dismiss the claim as redundant, even where "the allegations set forth in the complaint in support of the claim appear to overlap substantially with those that form the basis for" the breach of contract claim. *ASI Constructors, Inc. v. United States*, 129 Fed. Cl. 707, 721 (2016); *see also Iron Bow Techs., LLC v. United States*, 183 Fed. Cl. 315, 343 (2026) (rejecting government's "redundancy" argument where plaintiff "identified additional facts upon which its good faith claim relies"). Dismissal of the implied duty claim would be particularly inappropriate at this stage, where "the Court must construe the complaint in the light most favorable to the non-moving party and draw all reasonable inferences in favor" of the non-movant. *ASI Constructors*, 129 Fed. Cl. at 721.

Because the Complaint alleges these "additional facts" to support its implied duty claim, Defendant is incorrect in its contention that the Court's analysis of Plaintiff's two claims is identical because resolving the implied duty claim would require the Court to "interpret the same contract language," that is, the "termination provisions in the contract," "in the same manner as required for the breach of contract count." ECF No. 11 at 15. Additionally, to the extent Defendant asserts there can be no overlap in the Court's review of the two claims, Defendant is mistaken. Resolving the implied duty claim necessarily requires a review of "the obligations and opportunities established in the contract." *Dobyns*, 915 F.3d at 739 (quoting *Lakeshore Eng'g Servs., Inc. v. United States*, 748 F.3d 1341, 1349 (Fed. Cir. 2014)).

Finally, accepting Defendant's two arguments would place Plaintiff in an impossible position: if Plaintiff fails to adequately identify a "promise" in the Grant Agreement, Defendant would have the claim dismissed. But if Plaintiff *does* identify a concrete promise in the contract, then, according to Defendant, the claim should be eclipsed by a breach of contract claim. Defendant would thus nullify the implied duty of good faith and fair dealing altogether. That cannot be the correct outcome. *See Aries Constr. Corp. v. United States*, 164 Fed. Cl. 290, 297 (2023) (declining to dismiss implied duty claim because "[r]edundancy in a complaint's causes of action . . . is not ordinarily a basis for dismissal. This Court's Rules expressly permit 'alternative statements' of claims").

For these reasons, the Court should deny Defendant's request to dismiss the implied duty claim as redundant.

**d. Defendant's request is particularly inappropriate at this stage in litigation, but any dismissal should be without prejudice and with leave to amend.**

Notwithstanding the fact that the Complaint sufficiently pleads Plaintiff's implied duty claim, dismissal of Plaintiff's implied duty claim would also be premature at this stage in the proceedings. As noted, Defendant does not challenge Plaintiff's breach of contract claim. Plaintiff thus has no insight into how Defendant may seek to justify its termination decision based on the Grant Agreement's provisions or relevant regulations. Whatever the government ultimately argues, Plaintiff is entitled to assess the government's assertions against its duty of good faith, which asks not only whether Defendant's actions can be reconciled with the express terms of the Grant Agreement, but also whether those actions "destroy" Plaintiff's "reasonable expectations . . . regarding the fruits of the contract." *See Dobyns*, 915 F.3d at 739; *Kogan v. United States*, 112 Fed. Cl. 253, 271 (2013) (concluding it was "premature" to resolve implied duty claim before the court could determine what the contract required). Discovery may also illuminate the full scope of

Defendant's efforts to interfere with Plaintiff's performance under the contract. *See, e.g.*, *Laborant, LLC v. United States*, 180 Fed. Cl. 76, 89 (2026) (denying government's motion to dismiss implied duty claim and "allowing [plaintiff] the opportunity to develop Count II more fully in discovery."); *Hamilton Square, LLC v. United States*, 160 Fed. Cl. 617, 629 (2022) (declining to dismiss implied duty claim because discovery was needed to understand parties' expectations under contract).

For these additional reasons, the Court should deny Defendant's motion to dismiss. Should the Court elect to dismiss in contravention of Federal Circuit law, any dismissal should be without prejudice with leave to amend the Complaint to plead additional factual allegations supporting Plaintiff's implied duty claim. *See Metricolor LLC v. L'Oreal S.A.*, 791 F. App'x 183, 189 (Fed. Cir. 2019) ("Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment.").

**CONCLUSION**

For the reasons stated herein, Plaintiff respectfully requests the Court deny *Defendant's Partial Motion to Dismiss*, ECF No. 11.

Dated: November 23, 2026

Respectfully submitted,

*s/Amy E. Powell*
Amy E. Powell
Kunyu Ching
Alexis Daniel
LAWYERS FOR GOOD GOVERNMENT
1319 F St. NW, Suite 301
PMB 181
Washington, DC 20004
Phone: 404-913-5529 (Main)
Phone: 646-246-4633 (Amy Powell)
amy@lawyersforgoodgovernment.org
kunyu@lawyersforgoodgovernment.org
alexis@lawyersforgoodgovernment.org
*Counsel for Plaintiff*